UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DAVID BARBOZA,

                                    NO. CIV. S-08-02569 FCD/GGH

        Plaintiff,

    v.                              MEMORANDUM AND ORDER

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS, a
California corporation;
CALIFORNIA ASSOCIATION
OF PROFESSIONAL FIREFIGHTERS
LONGTERM DISABILITY PLAN;
CALIFORNIA ADMINISTRATION
INSURANCE SERVICES,
INC., a California
corporation; and KENNETH
BLANTON, DENNIS CAMPANALE,
GENE DANGEL, JAMES
FLOYD, CHARLES GLUCK, BRIAN
PINOMAKI, and WILLIAM SOQUI,
individually and as Plan
Directors,

        Defendants.

----oo0oo----

    This matter is before the court on (1) defendants California

Association of Professional Firefighters ("CAPF"), California

Administration Insurance Services, Inc. ("CAISI"), and Kenneth

Blanton, Dennis Campanale, Gene Dangel, Brian Pinomaki, Charles

1

Gluck, William Soqui, and James Floyd's (collectively "defendants") motion for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56; (2) plaintiff David Barboza's ("plaintiff") cross-motion for summary judgment; (3) defendants' motion for sanctions pursuant to Rule 11; and (4) plaintiff's cross-motion for Rule 11 sanctions.[1]   The court heard oral argument on the motions on December 3, 2010.   Based upon the submissions of the parties and the arguments made by counsel, and for the reasons set forth below, (1) defendants' motion for summary judgment is GRANTED in part and DENIED in part; (2) plaintiff's motion for summary judgment is GRANTED in part and DENIED in part; (3) defendants' motion for sanctions is DENIED; and (4) plaintiff's motion for sanctions is DENIED.

## BACKGROUND[2]

### A.   Defendants

Defendant CAPF is a non-profit mutual benefit corporation that sponsors the California Association of Professional Firefighters Long-Term Disability Plan (the "Plan").   (DUF ¶ 1.) Defendant CAISI administers the Plan and is responsible for making determinations regarding participants' disability and benefits.   (DUF ¶ 3; PUF ¶ 4; Answer ¶ 6.)   Individual Defendants

---

[1]   Defendants also filed a motion to modify the pretrial scheduling order to reopen discovery pursuant to Rule 16. Because, as set forth *infra*, the court concludes that the litigation is resolved by the pending motions, defendants' Rule 16 motion is DENIED as moot.

[2]   Unless otherwise noted, the facts contained herein are undisputed.   (See Defs.' Response to Pl.'s Separate Statement of Undisputed Facts ("PUF"), filed Aug. 6, 2010; Defs.' Reply Statement of Undisputed Facts ("DUF"), filed Sept. 20, 2010; Answer to Complaint ("Answer"), filed Feb. 13, 2009.)

2

1  Kenneth Blanton, Dennis Campanale, Gene Dangel, and Brian

2  Pinomaki are Directors and Executive Board members of CAPF and

3  are "fiduciaries" within the meaning of 29 U.S.C. §§ 1002(14) and

4  (21).  (Answer ¶¶ 7-9, 12.)  Plaintiff alleges that defendants

5  Charles Gluck and William Soqui are also Directors, Executive

6  Board members, and fiduciaries of CAPF.[3]  (Complaint ¶ 11, 13;

7  Answer ¶¶ 11, 13.)  Defendant James Floyd is the owner of

8  defendant CAISI.  (Answer ¶ 10.)

9  **B.   Plan Operations**

10      The Plan is an ERISA welfare benefit plan that receives its

11  funding exclusively from Plan participants, as opposed to

12  employers, and pays all benefits solely from Plan assets.  (DUF ¶¶

13  2, 4; PUF ¶ 5.)  Participant contributions are deposited into a

14  Wells Fargo Bank checking account (the "Account").  (PUF ¶ 20.)

15  The signatories on the Account are officers of CAISI.  (PUF ¶

16  22.)  In accordance with the administrative services agreement

17  between CAPF and CAISI, CAISI pays benefit claims and Plan

18  expenses by writing checks from the Account on behalf of CAPF.

19  (Administrative Services Agreement § 3.2, Ex. 4 to Decl. of

20  Geoffrey V. White in Support of Pl.'s Mot. for Summ. J.)  CAISI

21  also writes checks from the Account to remunerate CAISI for its

22  fees and expenses.  (PUF ¶ 25.)  CAISI does not provide CAPF with

23  invoices of its administrative expenses; however CAISI provides

24  CAPF with quarterly financial statements that detail the Plan's

25  fees and expenses.  (PUF ¶ 26; 28.)

26

27      [3]   In their Answer, Gluck and Soqui denied that they were
   Directors or Board members, or that they owed CAPF fiduciary
   duties.  However, defendants do not raise this issue in their
28  motion for summary judgment.

Beginning in 1994, CAPF agreed to pay CAISI an administrative services fee of $3.65 per Plan participant, per month. (DUF ¶¶ 33, 35; Decl. of Dennis Campanale ("Campanale") ¶ 7, filed July 30, 2010.)  This fee remained steady until the parties agreed to raise it to $3.75 per Plan participant, per month, beginning in April of 2009.  (DUF ¶ 33.)

CAPF and CAISI are not run by ERISA lawyers, actuaries, or accountants.  (Decl. of Campanale ¶ 18.)  Rather, CAPF and CAISI are controlled by active and retired firefighters.  (Id.)  As such, defendants assert that they consult with appropriate experts for advice on matters requiring specialized knowledge or experience.  For example, defendants assert that when CAPF's Board of directors (the "Board") needed to decide whether CAPF was required to file Form 990 with the Internal Revenue Service ("IRS"), they relied on the advice of an accountant and legal counsel.  (Id. ¶ 16.)  CAPF has not filed Form 990 since 2002. (PUF ¶ 9.)  Defendants also testify that they consulted with the United States Department of Labor ("DOL") and the California Department of Insurance ("DOI") to determine whether CAPF's corporate status could satisfy 29 U.S.C. § 1103's "held in trust" requirement.  (Decl. of Chris Chediak ("Chediak") ¶ 3, filed July 30, 2010; Dep. of Richard Floyd, at 14-15.)

CAPF's bylaws also require the Board to hire professionals for certain tasks.  For instance, the bylaws require that the Plan's benefit reserves undergo annual actuarial review to ensure that CAPF's funds are properly managed.  (PUF ¶ 41.)  Defendants assert that they complied with this requirement by hiring actuaries J. Paul Dorris and his partner Ken Vance to perform

4

1   this task.  (Decl. of Campanale ¶ 5.)  However, these actuaries

2   "closed their doors" for a period beginning in 2006 and ending in

3   2009, resulting in an "interruption" in actuarial review of

4   CAPF's funds between June 21, 2006 and July 2, 2009.  (Dep. of

5   Gene Dangel ("Dangel"), at 114-116; Dep. of Richard Floyd, at 97-

6   98.)

7   **C.   Plaintiff's Claims**

8        Plaintiff was a participant in the Plan.  (Answer ¶ 14.)  On

9   approximately May 31, 2006, plaintiff applied to the Plan for

10  long-term disability benefits.  (Answer ¶ 15.)  CAISI initially

11  denied plaintiff's application in a letter dated May 18, 2007.

12  (<u>Id.</u>)  After receiving additional medical evidence, CAISI heard,

13  and granted, plaintiff's appeal.  (<u>Id.</u>)  The parties dispute

14  whether plaintiff has received all of the benefits that he is

15  entitled to under the Plan.  This dispute was the subject of a

16  separate action before this court.  (<u>Id.</u>)  This action was

17  dismissed without prejudice for failure to exhaust administrative

18  remedies.[4]

19       In the present action, plaintiff brings suit against

20  defendants, the Plan, the Plan Administrator (CAISI), and the

21  individual board members of CAPF and CAISI, alleging numerous

22  breaches of fiduciary duties under Part 4 of Title I of ERISA.

23  (Compl., filed Oct. 28, 2008, ¶ 5.)  Plaintiff alleges that

24  defendants breached their fiduciary duties by: (1) failing to

25  /////

26  /////

27  _____

28       [4]   <u>Barboza v. California Ass'n of Professional</u>
    <u>Firefighters, et al.</u>, Civ. No. 08-0519 FCD/GGH.

distribute a Summary Annual Report ("SAR") to plan participants[5];
(2) unlawfully refusing to file Form 990 with the IRS; (3)
unlawfully failing to hold Plan assets in trust; (4) engaging in
unlawful self-dealing and prohibited transactions by coming to an
agreement that allows CAISI to use fees and expenses; (5)
engaging in prohibited transactions by renewing the
administrative services agreement between CAPF and CAISI,
including authorizing an administrative services fee increase,
agreeing to an unreasonably lengthy term, and including an
indemnity clause; and (6) failing to obtain actuarial review as
required by Plan bylaws.[6]   (<u>Id.</u>)

     Based on these alleged breaches, plaintiff seeks injunctive
relief to compel defendants to distribute the SAR and to file
Form 990.   Additionally, plaintiff requests that the court
appoint an independent Trustee/Receiver to remedy defendants'
alleged breaches and to conduct an accounting of the Plan.
(Complaint, at 7.)

                              **STANDARD**

**I.   Summary Judgment**

     The Federal Rules of Civil Procedure provide for summary
judgment where "the movant shows that there is no genuine dispute

---

     [5]   CAPF has not distributed a SAR to plan participants
since 2002.   (PUF ¶ 7.)

     [6]   Plaintiff's complaint alleged several other breaches of
fiduciary duties, including causing Plan investments to incur
substantial losses by imprudently delegating investment authority
and paying unlawful kick-backs to CAPF directors.   In his
opposition to defendants' Motion for Summary Judgment, plaintiff
concedes that he is no longer pursuing these claims.   (Pl.'s
Memorandum in Opposition to Defs.' Motion for Summary Judgment
and Reply in Support of Pl.'s Motion for Summary Judgment, 2.)

                                6

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the nonmoving party. <u>See Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp.</u>, 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. <u>See Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. <u>See Nissan Fire & Marine</u>, 210 F.3d at 1107. Instead, the nonmoving party must cite to "particular parts of materials in the record," or show that moving party's cited materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

7

56(c)(1).

**II.   Rule 11**

Pursuant to Fed. R. Civ. P. 11(b), when an attorney presents a pleading or motion to the court, the attorney certifies that, after reasonable inquiry, to the best of his or her knowledge, information, and belief:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." Conn v Borjorquez, 967 F.2d 1418 (9th Cir. 1992). Rule 11 "must be read in light of concerns that it will . . . chill vigorous advocacy." Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990).

**ANALYSIS**

**I.   Cross-Motions for Summary Judgment**

The statutory framework for breach of fiduciary duty claims brought by plan beneficiaries under ERISA implicate sections 404, 409, and 502, of ERISA, 29 U.S.C. §§ 1104, 1109, and 1132. See Quan v. Computer Sciences Corp., 623 F.3d 870, 878 (9th Cir. 2010).

29 U.S.C. § 1104 requires plan fiduciaries to act on behalf of the plan as a prudent person would. Specifically, 29 U.S.C. § 1104(a)(1)(A) imposes a duty upon a plan fiduciary to, "discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and . . . for the exclusive

purpose of: providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." See Friend v. Sanwa Bank California, 35 F.3d 466, 468 (9th Cir. 1994). Further, "a fiduciary must discharge these duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). In evaluating fiduciaries' compliance with the prudent person standard, a court's task is to consider whether individual fiduciaries appropriately investigated the merits of each disputed transaction at the time that the fiduciaries were engaging in the transaction. See Donovan v. Mazzola, 716 F.2d 1226 (9th Cir. 1983); see also Wright v. Oregon Metallurgical Corp. 360 F.3d 1090, 1097 (9th Cir. 2004).

29 U.S.C. § 1109 imposes liability upon a plan fiduciary for breach of fiduciary duty. 29 U.S.C. § 1109(a); see Quan, 623 F.3d at 878. A fiduciary can only be held personally liable for a breach of fiduciary duty to the extent that losses to the plan result from the breach. 29 U.S.C. s 1109(a); see Sanwa Bank California, at 468 (citing Brandt v. Grounds, 687 F.2d 895, 898 (7th Cir. 1982) (stating that the language of 29 U.S.C. § 1109(a) "clearly indicates that a causal connection is required between the breach of fiduciary duty and the losses incurred by the plan.")). However, loss causation is not required in an action for breach of fiduciary duty seeking injunctive relief. See Shaver v. Operating Eng'r Local 428 Pension Trust Fund, 332 F.3d 1198, 1203 (9th Cir. 2003) ("Indeed, the Ninth Circuit has

9

rejected the argument that there must be a loss to the plan in order to bring an action for breach of fiduciary duty seeking injunctive relief.")  Such a requirement would leave a plan's beneficiaries "powerless to rein in the fiduciaries' imprudent behavior until some actual damage has been done."  Id.

Finally, 29 U.S.C. § 1132 provides for civil enforcement, stating, in pertinent part, that a civil action for breach of fiduciary duty may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan."  29 U.S.C. § 1132(a)(2).  "To establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations."  Ford v. MCI Communications Corp. Health and Welfare Plan, 399 F.3d 1076, 1083 (9th Cir. 2005) (quoting Mathews v. Chevron Corp., 362 F.3d 1172, 1178 (9th Cir. 2004)).

A.   **Summary Annual Report**

Plaintiff alleges that defendants breached their fiduciary duties by failing to provide Plan participants with a Summary Annual Report ("SAR").  Plaintiffs assert that defendants are required to do so because 29 C.F.R. 2520.104b-10 requires administrators of an employee welfare plan to provide Plan participants with a SAR.  Defendants contend that the Plan did not have to comply with the SAR distribution requirement because they were exempt from 29 C.F.R. 2520.104b-10 as an "unfunded" plan.

/////

Pursuant to 29 C.F.R. 2520.104b-10(a), the administrator of an employee benefit plan must distribute a SAR to participants of the plan, unless an exemption applies. 29 C.F.R. 2520.104b-10(a) provides:

> "Except as otherwise provided in paragraph (g) of this section, the administrator of any employee benefit plan shall furnish annually to each participant of such plan and to each beneficiary receiving benefits under such plan (other than beneficiaries under a welfare plan) a summary annual report conforming to the requirements of this section."

29 C.F.R. 2520.104b-10(g)(1) exempts a totally unfunded welfare plan as described in 29 C.F.R. 2520.104-44(b)(1)(I) from filing a SAR.[7] 29 C.F.R. 2520.104-44(b)(1)(I) describes a totally unfunded welfare plan as an "employee welfare benefit plan under the terms of which benefits are to be paid . . . solely from the general assets of the employer or employee organization maintaining the plan." Neither party disputes that CAPF is an employee welfare benefit plan that receives its funding exclusively from participants and pays benefits solely from its general assets. (DUF ¶¶ 2, 4; PUF ¶ 5.)

However, the DOL[8] and IRS have clarified that plans that receive employee contributions or pay benefits from a trust[9] are

---

[7] "Notwithstanding the provisions of this section, a summary annual report is not required to be furnished with respect to . . . [a] totally unfunded welfare plan described in 29 C.F.R. 2520.104-44(b)(1)(I)." 29 C.F.R. 2520.104b-10(g)(1).

[8] The DOL regulates Title I of ERISA and is responsible for defining ERISA terms. See 29 U.S.C. § 1135, Am. Jur. 2d Pensions § 767. Accordingly, DOL opinions interpreting ERISA are persuasive.

[9] Indeed, while CAPF is not set up in trust format, as set forth infra, defendants assert the Plan's corporate structure is functionally equivalent to a trust.

11

not paying benefits "solely from the general assets of the employer or employee organization maintaining the plan" for purposes of the regulation.  In technical release 92-01, the DOL explained that "the relief afforded by . . . 2520.104-44 is not available to any welfare plan with respect to which benefits or premiums are paid from a trust."  (Id.)  The technical release further noted that

> "a welfare plan that applies participant contributions directly to the payment of benefits . . . would not qualify for exemptive relief because the benefits under such a plan could not be considered paid solely from the general assets of the employer.  Once the participant contributions are used, directly or indirectly, to pay benefits, they are, by definition, segregable from the employer's general assets."

(Id.)

DOL Opinion No. 94-31(A) provided further clarification, acknowledging that while a welfare plan can be maintained without identifiable plan assets "by paying plan benefits exclusively from the general assets of the employer," the exemption does not apply once the "employer takes steps that cause the plan to gain a beneficial interest in particular assets, under ordinary notions of property rights."  (Id.)  Once the plan obtains a beneficial interest, such assets become plan assets rather than employer assets.  (Id.)  The DOL explained that "a welfare plan will generally have a beneficial interest in particular assets if [an entity] establishes a trust on behalf of the plan, sets up a separate account with a bank or with a third party in the name of the plan, or specifically indicates in the plan documents or instruments that separately maintained funds belong to the plan."  (Id.)

Finally, the instructions on IRS Form 5500 are consistent with the DOL letters in noting that a Plan is not unfunded and does not qualify for an exemption where contributions are placed in either a trust or a separately maintained fund.  Specifically, under the <u>Who Must File</u> section, Form 5500 states that "[p]lans that are NOT unfunded include those plans that received employee . . . contributions during the plan year and/or used a trust or separately maintained fund . . . to hold plan assets . . . ." These instructions are consistent with DOL Advisory Opinion No. 92-24(A), which provides, in relevant part:

> As explained in the instructions to the Form 5500 series, a plan seeking to rely on this first prong of the exemption cannot pay benefits from participant contributions . . . from a trust . . . that holds plan assets.  In other words the application of this prong of the exemption to a given plan turns, as a threshold matter, on whether any of the amounts used to pay benefits constitute plan assets.

The evidence is undisputed that CAPF pays its premiums from a corporation that serves the function of a trust and applies participant contributions directly to the payment of benefits. Pursuant to the guidance provided in DOL Opinion No. 94-31(A), once CAPF takes contributions and deposits them into the Plan's corporate account, the plan gains a "beneficial interest" in those funds, and the contributions become "plan assets." Accordingly, because CAPF is not a totally unfunded welfare plan under 29 C.F.R. 2520.104-44(b)(1)(I), it is not exempt from 29 C.F.R. 2520.104b-10's SAR distribution requirement.

Therefore, because it is undisputed that defendants have failed to distribute a SAR since 2002 and because CAPF is not entitled to an exemption, there is no genuine issue of material

fact as to whether defendants unlawfully failed to distribute a SAR to Plan participants.  Thus, as to defendants' alleged breach of fiduciary duty for failure to distribute a SAR to Plan participants, defendants' motion for summary adjudication is DENIED and plaintiff's motion for summary adjudication is GRANTED.

The court notes that plaintiff has failed to present evidence of any monetary loss as a result of defendants' failure to distribute SARs.  However, loss causation is not required in an action for breach of fiduciary duty seeking injunctive relief. See Shaver, 332 F.3d at 1203.  Accordingly, defendants are directed to furnish SARs from 2002 to date to all participants in accordance with 29 C.F.R. 2520.104b-10.

**B.    Form 990**

Plaintiff next alleges that defendants breached their fiduciary duties by unlawfully failing to file Form 990 with the IRS.  Defendants argue that they discharged their fiduciary duties regarding the filing of Form 990 with the required prudence by seeking the advice of qualified experts.

As fiduciaries, defendants are required to comport with the prudent person standard of care.  29 U.S.C. § 1104(a)(1)(B). Securing an independent assessment from a financial advisor or legal counsel provides evidence of a thorough investigation in defense of a charge of imprudence.  Howard v. Shay, 100 F.3d 1484, 1489 (9th Cir. 1996)(citations omitted).

However, demonstrating that independent expert advice has been sought is not determinative.  Donovan v. Bierwirth, 680 F.2d 263, 272 (2d Cir. 1982).  A fiduciary is not justified in relying

14

wholly upon the advice of others.  <u>Donovan v. Mazzola</u>, 716 F.3d 1226, 1234 (9th Cir. 1983).  In <u>Mazzola</u>, individual trustees of a union pension fund appealed a district court judgment finding that they breached their fiduciary duties under ERISA.  <u>Id.</u> at 1227-28.  The Ninth Circuit found that the defendants imprudently discharged their duties when they selected an acquaintance, Dr. Schwartz, to perform a feasibility study on behalf of the plan. Upon finding that defendants never inquired into Dr. Schwartz's qualifications and that Dr. Schwartz had never conducted a similar study in the past, the court concluded that defendants breached their fiduciary duties by failing to comply with accepted industry standards.  <u>Id.</u> at 1229-30.  As such, the court held that a fiduciary has a duty to exercise his own judgment in the light of the information and advice he receives.  <u>Id.</u>

In order to exercise reasonable prudence in seeking expert advice, a fiduciary must (1) investigate the expert's qualifications, (2) provide the expert with complete and accurate information, and (3) make certain that reliance on the expert's advice is reasonably justified under the circumstances.  <u>Howard</u>, at 1489.  As such, the fiduciary's duty is to ensure that the expert is qualified and reliable, not to investigate the accuracy of the expert's advice.  <u>Id.</u>

Defendants present evidence that they discharged their fiduciary duties with prudence by seeking professional counsel to determine whether CAPF was required to file Form 990 with the

IRS.[10]  Specifically, defendant and CAPF Executive Board member,

Dennis Campanale declared that "CAPF relied on the advice of its

legal counsel . . . and its CPA . . . in deciding whether Form

990 was required to be submitted to the Internal Revenue

Service." (Decl. of Campanale, ¶ 16.)  There is no evidence that

defendants failed to reasonably investigate their legal counsel's

or their CPA's qualifications or that their experts were not

sufficiently qualified.  Nor does plaintiff assert that

defendants failed to provide their experts with complete and

accurate information.  Accordingly, defendants have submitted

undisputed evidence that they reasonably relied on the advice of

qualified experts.[11]

Plaintiff asserts that defendants were required to consult

with competitor plans in deciding whether they need to file Form

990; however, plaintiff's assertion suggests a standard that

exceeds the requirements imposed upon a fiduciary in the Ninth

---

[10]    Defendants concede that, as former and current
firefighters, not legal or accounting experts, prudence requires
them to seek the advice of professionals on legal or accounting
issues.  (Decl. of Campanale ¶ 18.)

[11]    Plaintiff argues that defendants have not sufficiently
demonstrated that they obtained proper expert advice.  However,
defendants have submitted admissible evidence from a witness with
personal knowledge stating that defendants sought advice from
their CPA and legal counsel.  Plaintiff has not presented any
evidence in contravention of this statement.

Plaintiff attempts to discredit defendant Campanale's
testimony by citing the testimony of board member, Gene Dangel.
Plaintiff asserts that Dangel's statement that he was unaware of
CAPF seeking professional advice on filing Form 990 contradicts
Campanale's testimony.  (Deposition of Gene Dangel, 130-131.)
However, one board member's lack of awareness regarding the
pursuit of professional advice does not demonstrate that another
board member's testimony that professional advice was sought is
either false or inaccurate.

Circuit. <u>See Howard</u>, 100 F.3d at 1489. The Ninth Circuit's decision in <u>Howard</u> expressly holds that a fiduciary's duty is fulfilled by investigating the qualifications and reliability of an expert under all the relevant circumstances. Defendants have presented evidence that they did so.

Therefore, plaintiff has failed to demonstrate a genuine issue of material fact as to whether defendants' conduct constitutes compliance with 29 U.S.C. § 1104's prudent person standard. Thus, with respect to plaintiff's claim that defendants breached their fiduciary duty by unlawfully refusing to file Form 990 with the IRS, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED.

C.   **Plan Assets**

Plaintiff also alleges that defendants breached their fiduciary duties by unlawfully failing to hold Plan assets in trust, in violation of 29 U.S.C. § 1103. Defendants admit that CAPF does not have a trust or a trust document. (Defendants' response to PUF ¶ 11, 13.) Nonetheless, defendants assert that CAPF is compliant with 29 U.S.C. § 1103 because they relied upon the advice of qualified experts that a corporate structure, such as CAPF's, satisfies 29 U.S.C. § 1103's "held in trust" requirement.

Defendants present undisputed evidence that they relied upon advice from the DOL and the DOI that they satisfied the requirements of § 1103 by holding plan assets in a corporate structure. Specifically, defendants present evidence that "CAPF was informed by the DOL that a corporation can satisfy the hold-

in-trust requirements under ERISA section 403(a)."[12]

Additionally, defendants were advised by the DOI that CAPF should

be structured as a corporation rather than a trust. (Dep. of

Richard Floyd, at 14-15.) As such, defendants' decision

regarding the corporate structure of the Plan was based upon

expert advice.[13]

Plaintiff asserts that, even if defendants did receive

advice from the DOL, defendants were not reasonably justified in

relying on the DOL's advice.[14] Specifically, plaintiff states

that any advice provided by the DOL in 1987 could not have been

reasonably relied upon because it was superseded by DOL

regulation 29 C.F.R. 2510.3-102 that became effective on February

3, 1997. (See DUF ¶ 24.) Specifically, plaintiff asserts that

29 C.F.R. 2510.3-102 requires that "participant contributions

---

[12]   As discussed *supra*, reliance upon DOL advice regarding
ERISA requirements is reasonable because the DOL regulates Title
I of ERISA and defines ERISA's terms.

[13]   Defendants' belief that CAPF's corporate structure
fulfills 29 U.S.C. § 1103's "held in trust" requirement is also
based on Treas. Reg. 1.501(c)(9)-2(c)(1) which states that "a
voluntary beneficiary association must be an entity, such as a
corporation or trust established under applicable local law,
having an existence independent of the member-employees of their
employer." Because the issue at hand is defendants' compliance
with the prudent person standard of care, rather than the
accuracy of defendants' or defendants' professional advisors
statutory interpretation, the court's analysis focuses on
defendants' prudence in seeking advice rather than the
applicability of Treas. Reg. 1.501(c)(9)-2(c)(1).

[14]   Plaintiff objects to Chediak's testimony, arguing that
his statement is "entirely without foundation and hearsay, made
by a 'percipient expert' witness never designated as such."
(Pl.'s Me. in Opp. to Defs.' Mot. for Summ. J. and Reply in
Support of Pl.'s Mot. for Summ. J., at 8.) Chediak's testimony
is offered for the purpose of demonstrating that defendants
sought advice, a matter which he testifies that he has personal
knowledge of. Accordingly, plaintiff's objection is overruled.

become 'plan assets' as soon as they can reasonably be segregated from the employer's assets." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. and Reply in Support of Pl.'s Mot. for Summ. J., filed Sept. 10, 2010, at 9.)  Plaintiff further asserts that the participant contributions that become plan assets "must be held in trust."  (Id.)

However, plaintiff's interpretation of 29 C.F.R. 2510.3-102 does not raise a material issue of fact regarding defendants' reasonable reliance upon expert advice.  29 C.F.R. 2510.3-102 does not include language that would lead a fiduciary to reevaluate prior DOL advice regarding a plan's ability to satisfy 29 U.S.C. § 1103's "held in trust" requirement with a corporation rather than a trust.  Rather, the regulation defines plan assets and clarifies when funds become plan assets rather than employer assets.  The regulation does not discuss where plan assets must be held.  As such, it does not provide any guidance regarding whether the assets need to be held in a trust as opposed to in a corporation.  Accordingly, the language of 29 C.F.R. 2510.3-102 would not cause a reasonable fiduciary who had previously sought and received expert advice authorizing CAPF's corporate structure to reevaluate whether it was meeting the requirements of § 1103.

Accordingly, with respect to plaintiff's claim that defendants breached their fiduciary duty by failing to hold Plan assets in trust in violation of 29 U.S.C. § 1103, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED.

/////

/////

### D.   **Payment of CAISI's Fees Directly from Plan Assets**

Plaintiff further alleges that defendants breached their fiduciary duties by engaging in unlawful self-dealing and prohibited transactions under 29 U.S.C. 1106(b) by coming to an agreement that allows CAISI to use Plan assets to pay its own fees and expenses.  Defendants argue that the manner in which CAISI receives its administrative fees is not prohibited because it does not constitute unlawful self-dealing.

Transactions between a plan and its fiduciary that implicate self-dealing are prohibited by 29 U.S.C. 1106(b).  Specifically, 29 U.S.C. 1106(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  29 U.S.C. 1106(b)(2) prohibits a fiduciary from engaging in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan or its participants.

Defendants submit undisputed evidence to show that the fiduciaries exercised prudent care in developing their payment structure and ensuring that the payment structure never resulted in any financial irregularities.  CAPF and CAISI negotiated and mutually agreed upon CAISI's fees, rather than CAISI determining them unilaterally.  (DUF ¶ 33.); cf. Patelco Credit Union v. Sahni, 262 F.3d 897 (9th Cir. 2001) (holding that the defendants breached fiduciary duties where, inter alia, the plan administrator unilaterally determined his own fee); Chao v. Graf, No. 01-0698, 2002 WL 1611122, (D. Nev., Feb. 1, 2002) (same).  CAPF also hired a qualified accountant who approved of the structural controls that the Plan had in place to prevent CAISI

from engaging in self-dealing.  (DUF ¶ 31.)   The same accountant performs annual audits of the Plan.  (DUF ¶ 30.)   None of the accountant's annual audits have revealed any financial irregularities or indications of self-dealing by CAISI.  (DUF ¶ 32.)   Accordingly, defendants have demonstrated that they exercised prudent care in structuring CAPF and CAISI's transactions in a manner that did not involve self-dealing in violation of ERISA.

Nonetheless, plaintiff asserts that CAISI's transactions are prohibited because case law has deemed such conduct *per se* unlawful.  However, plaintiff's reliance on <u>Patelco Credit Union v. Sahni</u>, 262 F.3d 897 (9th Cir. 2001), for the proposition that an administrator's payment of its own fees out of Plan funds is a *per se* violation of 29 U.S.C. 1106(b) is misplaced.  In <u>Patelco</u>, the plaintiff alleged that the defendant breached his fiduciary duties by engaging in prohibited self-dealing in violation of 29 U.S.C. 1106(b).  The defendant managed the Patelco Credit Union Health Plan, controlled its assets, and selected the plan's insurance provider.  <u>Id.</u> at 901.  Each month, the plaintiff paid the defendant the amount that the defendant estimated was necessary to cover benefits to participants, insurance premiums, and his administrative fee.  <u>Id.</u>  The defendant received these funds from Patelco, and commingled these funds with the assets from other plans that he administered.  <u>Id.</u>  The Ninth Circuit described the defendant's accounting for these plans as "sloppy" and found that the defendant received commissions from the insurance company that he hired, determined and collected administrative fees from the Plan's funds by himself, and marked

up the amount that he reimbursed himself for the plan's premiums. Id. at 911.  Under these facts, the Ninth Circuit held that the defendant breached his fiduciary duties by engaging in prohibited self-dealing.

Unlike the circumstances in Patelco, the facts in this case do not provide a basis for a conclusion that CAISI engaged in self-dealing.  Unlike in Patelco, there are no allegations that CAISI received commissions from a third party, no evidence that CAISI "marked up" any of their contractually agreed-upon charges, nor is there evidence that defendants determined their own administrative fees.  Indeed, it is undisputed that CAISI and CAPF contractually agreed upon CAISI's administrative fee.  (DUF ¶ 33.)  Therefore, because the Ninth Circuit's finding of self-dealing in Patelco was based upon vastly dissimilar conduct to that of CAISI, Patelco does not provide a basis for finding that defendants engaged in prohibited transactions.

Plaintiff's reliance on Chao v. Graf, No. 01-0698, 2002 WL 1611122, (D. Nev., Feb. 1, 2002) for the proposition that writing checks from a trust account to oneself or other entities that one controls constitutes a per se violation is similarly misplaced. In Chao, the Secretary of the DOL brought an ERISA action for breaches of fiduciary duties against an organization that oversaw the management of employee benefit plans and the individuals responsible for running this organization.  Chao at *1.  The defendants in Chao were involved in "numerous transactions involving . . . examples of self-dealing."  Id. at *10.  These defendants "set their own compensation and determined their own expenses from plan assets, and used their discretionary authority

22

and control to cause the [benefit plans] to contract with . . . entities owned and controlled by these defendants." Id.

Contrary to the facts in Chao, CAISI's actions at issue in this case do not rise to the level of self-dealing. Unlike the defendants in Chao, CAISI's compensation was authorized by CAPF in agreeing to CAISI's administrative services agreement. There is no evidence that CAISI "set their own compensation" or "determined their own expenses." Accordingly, Chao does not provide a basis for finding that defendants engaged in prohibited transactions.[15]

Therefore, plaintiff has failed to raise a genuine issue of material fact with respect to whether CAISI's conduct constitutes self-dealing in violation of 29 U.S.C. § 1106(b). Accordingly, on this matter, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED.

### E. Renewal of CAPF and CAISI's Administrative Services Agreement

#### 1. Administrative Services Fee

Plaintiff alleges that CAPF's directors violated their fiduciary duty to Plan participants by authorizing an increase in

---

[15] Finally, plaintiff' reliance upon Briscoe v. Preferred Health Plan, Inc., 3:02-264, 2008 WL 4146381 (W. D. Ky., September 3, 2008), raised for the first time at the December 3, 2010 hearing, is also misplaced. In Briscoe, the defendant-plan administrator wrote itself a check from the plan to account for unpaid administrative fees. The court in Briscoe found "that there is no contract provision which permits [defendant] to simply pay itself an administrative services fee from the Plan account." Id., at *2. Thus, the actions of the defendant in Briscoe are dissimilar to CAISI's actions, because the administrative services agreement permits CAISI to write checks on CAPF's behalf to pay for administrative fees.

CAISI's administrative service fee.  Plaintiff asserts that
defendants failed to comport with their duty of prudence by
failing to investigate the reasonableness of the per participant
fee increase, by failing to seek independent expert advice on
this matter, and failing to conduct arms length negotiations of
the contract terms.  Defendants argue that they acted prudently
in renewing this contract by conducting an appropriate
investigation under the circumstances.

     The undisputed evidence reveals that defendants conducted a
reasonable investigation regarding the fee increase under all the
circumstances.  While CAPF's Board did not undertake a full-scale
investigation, they did conduct a brief review of whether the
proposed price increase was in the Plan's best interest.  In
December of 2008, CAISI owner Jerry Floyd met with CAPF Board
member Gene Dangel, who informally cited increased operating
costs, then proposed a ten (10) cent per member, per month
administrative fee increase for the following year.  (Dep. of
Gene Dangel, at 60-61.)  CAPF's Board discussed at length the
work that CAISI does in administering the plan, then determined
that the proposed increase was "more than reasonable for the work
that they do."  (Id. at 62-63.)  CAPF was satisfied with CAISI's
services throughout their long-standing relationship. (Decl. of
Dennis Campanale, ¶ 12.)  Further, the Board did not feel the
need to shop around for another administrator because, in the
Board's opinion, CAISI kept premiums low by outperforming its
competitors in marketing the Plan and recovering third-party
benefits.  (Id. ¶ 13.)  Moreover, the renewed contract called for
an increase in administrative fees of less than three percent

after it had operated without a fee increase for fourteen (14) years.[16] Under the circumstances, prudence does not call for an investigation beyond CAPF's discussion of the reasonableness of the increase and consultation with counsel.

Based on the above factors, CAPF's informal investigation into the propriety of the proposed increase was sufficient to fulfill their fiduciary duty of prudence. Accordingly, there is an absence of a genuine issue of material fact as to plaintiff's claim that defendants breached their fiduciary duty by agreeing to the administrative services fee increase in CAPF and CAISI's renewed contract. Therefore, on this matter, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED.

### 2. Contract Term

Plaintiff also claims that the one-year term of the renewed contract violates the "reasonably short notice" termination provision of 29 C.F.R. 2550.408b-2(c). Plaintiff argues that, "a one-year term is not short"; defendant counters that the term of the contract is not unreasonably long.

29 C.F.R. 2550.408b-2(c) states that "[n]o contract or arrangement is reasonable . . . if it does not permit termination by the plan without penalty to the plan on reasonably short notice . . . to prevent the plan from becoming locked into an arrangement that has become disadvantageous."

The court concludes that under the circumstances of this case, plaintiff has failed to demonstrate that the one-year term

---

[16]     Additionally, CAPF sought advice from legal counsel regarding this matter. (Dep. of Campanale, at 65).

was unreasonable.  Indeed, plaintiff has failed to present any evidence that the one-year term locked CAPF into an arrangement that became disadvantageous for the Plan.  Further, plaintiff fails to support his assertion that a one-year contract term is *per se* unreasonable.  Plaintiff relies solely on cases that involve substantially longer terms of service.  <u>International Union of Bricklayers and Allied Craftsmen v. Gallante</u>, 912 F. Supp. 695 (S.D.N.Y., 1996) (three years); <u>Gilliam v. Edwards</u>, 492 F. Supp. 1255 (D.N.J., 1980) (ten years).

Accordingly, plaintiff has failed to raise a genuine issue of material fact as to whether defendants breached their fiduciary duty based on the term of CAPF and CAISI's renewed contract.  Therefore, on this matter, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED.

### 3.   Indemnity Clause

Plaintiff further claims that 29 U.S.C. § 1110 voids the indemnity clause in CAPF and CAISI's renewed agreement. Defendants' argue that plaintiff's have not introduced any evidence that this clause has ever been invoked.

29 U.S.C. § 1110(a) states that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."  Thus, the plain language of 29 U.S.C. § 1110(a) expressly prohibits the indemnity clause in the renewed contract.

However, plaintiff has presented no evidence of monetary loss arising from the presence of the indemnity clause.  Indeed,

there is no evidence that the indemnity clause has ever been invoked.  Accordingly, there is no evidence to support the award of damages in this case.

Thus, as to plaintiff's claim that the indemnity clause within the administrative services agreement is void pursuant to 29 U.S.C. § 1110(a), defendants' motion for summary adjudication is DENIED, and plaintiff's motion for summary adjudication is GRANTED.  Because plaintiff is not required to demonstrate loss causation in order to be entitled to injunctive or declaratory relief, the court declares that the indemnity clause portion of the administrative services agreement is unenforceable.  See Shaver, 332 F.3d 1198, 1203.

## F. Actuarial Review of Plan Reserves

Finally, plaintiff alleges that defendants have breached their fiduciary duty by failing to exercise prudent care in ensuring that the Plan has adequate reserves for incurred benefit claims.  Specifically, plaintiff alleges that defendant has failed to seek professional, actuarial advice often enough to comply with 29 U.S.C. § 1104's prudent person standard. Defendant argues that they have sufficiently sought actuarial review in compliance with 29 U.S.C. § 1104.

ERISA fiduciaries must comply with the requirements imposed by the Plan itself.  The Ninth Circuit has held that failure to comply with the Plan's written statements constitutes a breach of fiduciary duty.  See California Ironworkers Field Pension Trust v. Loomis Sayles & Co., 259 F.3d 1036, 1042 (9th Cir. 2001) (citing Dardaganis v. Grace Capital, Inc., 889 F.2d 1237, 1241-42 (2d Cir. 1989) (providing that a fiduciary's failure to act in

27

accordance with plan documents "is not merely evidence of imprudent action but may, in itself, be a basis for liability under section 1109")); see also Tibble v. Edison Intern., 639 F. Supp. 2d 1074 (C.D. Cal. 2009) (noting that "[a] fiduciary's failure to discharge its duties in accordance with the plan documents is an independent basis for finding a breach of fiduciary duty under § 1104(a)(1).")  The CAPF Plan document requires the Plan to "retain a licensed actuarial firm to conduct actuarial reviews on a periodic basis, but no less than annually, regarding the reserves maintained for the payment of Benefits." (CAPF Plan document ¶ 5.2.)

Plaintiff submits undisputed evidence that defendants failed to comply with the Plan's requirement of annual actuarial review. Defendant and CAPF Executive Board member, Gene Dangel, testified that there was an "interruption" in CAPF receiving actuarial reports between June 21, 2006 and July 2, 2009.  (Dep. of Gene Dangel, at 114-116.)  Richard Floyd, owner of CAISI, testified that CAPF's actuaries "closed their doors" for health reasons for the period of 2006 through 2009.  (Dep. of Richard Floyd, at 97-98.)  Richard Floyd also testified that the actuary "put [CAPF] off for a long time" by saying that he was physically able to complete the review, then delaying doing so.  (Id.)

However, plaintiff has not submitted evidence that defendants' conduct resulted in loss to the plan.  As such, plaintiff has failed to present evidence that he is entitled to an award of damages.

Accordingly, there is an absence of a genuine issue of material fact as to whether defendants breached their fiduciary

duty by failing to comply with the Plan's annual actuarial review requirement.  Thus, defendants' motion for summary adjudication is DENIED and plaintiff's motion for summary adjudication is GRANTED.  Because plaintiff is not required to demonstrate loss causation in order to be entitled to injunctive or declaratory relief, the court orders defendants to obtain actuarial studies for each year that the plan has not undergone actuarial review. See <u>Shaver</u>, 332 F.3d 1198, 1203.

## II.   Cross-Motions for Rule 11 Sanctions

Defendants move for sanctions pursuant to Federal Rule of Civil Procedure 11, asserting that plaintiff's complaint in this case is factually unsupported and was filed for an improper purpose.  Plaintiff opposes this motion, arguing that his complaint contains sufficient factual support and was brought for a proper purpose.   In his opposition, plaintiff filed a cross-motion to recover sanctions under Rule 11, in the amount of fees required to respond to defendants' motion for sanctions, arguing that defendants' motion is frivolous and was filed for an improper purpose.

Defendants do not meet Rule 11's high burden in demonstrating that plaintiff's allegations do not have evidentiary support.  Indeed, defendants do not necessarily dispute the factual underpinnings of plaintiff's claims, but assert that such facts do not give rise to a claim for relief. For example, plaintiff alleged that defendants breached their fiduciary duties by failing to file SARs.  Defendants did not dispute that they had failed to file SARs, but rather argued that they were exempt from the filing requirements.  As such, the

factual allegations were supported by evidence.  Similarly, plaintiff alleged that defendants' breached their fiduciary duties by structuring CAPF as a corporation rather than a trust. While, as set forth *supra*, the court concluded that defendants fulfilled their fiduciary duties regarding the structure of CAPF's Plan assets, the factual allegations regarding CAPF's corporate structure were true; defendants admit that CAPF is a corporation without a trust or a trust document. (Defendants' response to PUF ¶ 11, 13.)  Finally, plaintiff claims that defendants breached their fiduciary duty by failing to obtain actuarial review as required by the Plan document.  The evidence was undisputed that defendants failed to file the requisite actuarial review for several years.  Accordingly, this claim also had evidentiary support.

Defendants also fail to submit sufficient evidence that plaintiff's complaint was brought for an improper purpose.  While plaintiff's current suit was filed after his suit for damages arising out of his personal benefit claim was dismissed, the timing is consistent with plaintiff's assertion that he learned of the factual basis of the current suit while conducting discovery in the prior suit.

Similarly, there is no basis to award sanctions to plaintiff against defendants.  While defendants' motion is not persuasive, the court cannot conclude on the record before it that the filing was frivolous or submitted with an improper purpose.

Accordingly, defendants' motion for Rule 11 sanctions is DENIED, and plaintiff's cross-motion for Rule 11 sanctions is DENIED.

**CONCLUSION**

For the foregoing reasons, the court finds that defendants' motion for summary judgment is DENIED in part and GRANTED in part, and plaintiff's motion for summary judgment is DENIED in part and GRANTED in part.  Specifically, with respect to plaintiff's claim of breach of fiduciary duty:

(1)   for failing to distribute a SAR to Plan participants, defendants' motion for summary adjudication is DENIED, and plaintiff's motion for summary adjudication is GRANTED;

(2)   for unlawfully refusing to file Form 990 with the IRS, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED;

(3)   for violating 29 U.S.C. § 1103 by failing to hold Plan assets in trust, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED;

(4)   for engaging in unlawful self-dealing and prohibited transactions under 29 U.S.C. 1106(b) by coming to an agreement, wherein CAISI uses Plan assets to pay its own fees and expenses, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED;

(5)   for authorizing the administrative services fee in renewing the administrative services agreement between CAPF and CAISI, defendants' motion for summary adjudication is GRANTED, and plaintiff's motion for summary adjudication is DENIED;

(6)   for agreeing to a one-year term of the renewed contract, defendants' motion for summary adjudication is GRANTED, and

plaintiff's motion for summary adjudication is DENIED;

(7)  for including an indemnity clause in the renewed contract, defendants' motion for summary adjudication is DENIED, and plaintiff's motion for summary adjudication is GRANTED; and

(8)  for failing to obtain actuarial review for a period of approximately three years, defendants' motion for summary adjudication is DENIED, and plaintiff's motion for summary judgment is GRANTED.

In accordance with these conclusions, defendants are ordered to distribute SARs from 2002 to date to all participants in accordance with 29 C.F.R. 2520.104b-10 and to obtain actuarial studies for each year that the plan has not undergone actuarial review.  Further, the indemnity clause in CAPF and CAISI's administrative services agreement is declared void and unenforceable.  Additionally, for the reasons set forth above, defendants' motion for sanctions is DENIED and plaintiff's cross-motion for sanctions is DENIED.

This case is Closed.  The Clerk of Court is directed to Close this case.

IT IS SO ORDERED.

DATED: January 25, 2011

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE